**COASTAL STATES CRUDE GATHERING COMPANY,**
**Appellant,**

v.

**STATE PROPERTY TAX BOARD, Appellee.**

No. 3–87–182–CV.

Court of Appeals of Texas, Austin.

March 9, 1988.

Rehearing Denied April 6, 1988.

M. Frank Powell, Powell, Popp & Ikard, Austin, for appellant.

Anne E. Swenson, Asst. Atty. Gen., Austin, for appellee.

Before POWERS, BRADY and CARROLL, JJ.

CARROLL, Justice.

Coastal States appeals from a take-nothing judgment rendered against it in the trial court. The company had sought a declaratory judgment that it was not required to pay property taxes on certain petroleum product pipelines. We will reverse the judgment of the trial court and here render judgment favoring appellant.

## BACKGROUND

This is a property tax case. The parties agree on the facts; the only question is whether certain intangible property is taxable under Tex.Tax Code Ann. Chapter 24 (1982).

At the time pertinent to this lawsuit, appellant owned three pipeline systems. The parties stipulated that the first carried only oil; the second, liquified petroleum gas (LPG); and the third, refined oil products. Coastal States operated each pipeline independently of the others, and kept separate accounting records for each. The oil pipeline business only accounts for about 10% of appellant's income and worth; the remainder derives from the transportation of LPG and refined oil products.

Coastal States contends that the trial court erred as a matter of law in declaring that the second and third pipeline systems were subject to property taxes under the plain language of Chapter 24 of the Tax Code. The State replies that the statute's language, its legislative history and the intent of its drafters support the trial court's judgment.

Section 24.01 of the Tax Code reads in part:

"The State Property Tax Board shall appraise for taxation the intangible value of the transportation operation in this state of the following businesses

. . . . .

(5) oil pipelines and common carrier pipelines engaged in the transportation of oil."

This language leaves no doubt that appellant's first pipeline, the one that carries only oil, is subject to appraisal and taxation, and Coastal States does not question that notion here. However, Coastal States vigorously disputes the Property Tax Board's—and the trial court's—determination that this language also requires the Board to appraise and tax the other two pipelines. Coastal contends that "the transportation operation ... of the following businesses" means that it is the business *activity* of transporting oil that triggers the taxation. Thus, since Coastal States is a common-carrier, only its "transportation of oil" business (*i.e.*, activity) should be subject to tax. That would include the first pipeline, but not the second and third.

Conversely, the appellee reads the same language to encompass any business *entity* that transports oil. Under this view, once an entity engages in *any* transportation of oil, it is forever (or at least as long as it transports oil) characterized as an oil transporter, and *all* its transportation operations are subject to appraisal and tax. As it pointed out often in its brief and in oral argument, the Board views the introductory paragraph of Chapter 24 as covering *who* (in its view, "the following businesses" here means oil-transporting entities) will be taxed, and the language under subsection 5 as indicating *what* (their transportation operations) will be taxed. Accordingly, Coastal States is a common-carrier pipeline "business," (*i.e.* company) that is engaged in the transportation of oil, and therefore subject to tax on *all* its transportation operations.

## DISCUSSION

The tax code is replete with uses of the word "business" that are susceptible to either the "entity" or the "activity" theory. Dictionaries, of course, give both definitions, and these facts leave little guidance as to which preference to use. Even the standards of review conflict. If there is doubt as to a statute's meaning, appellant tells us it is to be resolved *against* the taxing entity, *i.e.* the Board. *Wilson Communications v. Calvert*, 450 S.W.2d 842 (Tex.1970). Yet appellee correctly points out that when the meaning of a statute is unclear, the interpretation used by the agency administering it—in this case, the Board—should be given great weight.

■ Fortunately, the plain language of the statute is not nearly so confusing as these so-called interpretational "aids." In fact, both sides agree that the plain language of the statute supports their position and should control. We agree that the statutory language alone should control. Where a statute is unambiguous, the court must discern legislative intent from the language of the statute itself without resort to the rules of statutory construction. *Mrs. Tucker's Foods v. Calvert*, 296 S.W.2d 787 (Tex.Civ.App.1956, writ ref'd n.r.e.).

■ Looking only to the plain language of Chapter 24, we find the Board's view to be incorrect for two reasons. First, it would lead to absurd results. A shipper who transported a gallon of oil would suddenly be rendered, by virtue of that single activity, an entity engaged in the transportation of oil; *all* of its other transportation operations would be subject to the property tax.

Second, a property tax is by definition a tax *on property*, not companies. Confining ourselves to the language of the statute, it is clear that Chapter 24 is aimed at a company's *property*, not the company itself as an entity. Each item listed in the subsections of Chapter 24 (railroads, toll roads, ferries, *et al.*) is, like "common-carrier pipeline," a kind of property, a thing whose value is to be appraised. In this light, when the chapter mentions "common-carrier pipelines," it is talking about them *as property*, as things to be taxed, *not* as companies. (From this it follows that "business," in the context of the language of Chapter 24, refers to the activity of transporting oil, not the entity of oil-transporter.) Therefore, we construe the phrase, "The Property Tax Board shall appraise ... the intangible value of ... common-carrier pipelines engaged in the transportation of oil" to mean that the Board is to look to only those pipelines, belonging to a common-carrier company, that are actually used to transport oil.

In this case, that means that only Coastal's first pipeline—the one that carries oil—is subject to appraisal and taxation under Chapter 24. The two pipelines not so engaged are not subject to taxation under the plain meaning of that statute.

## CONCLUSION

■ We sustain appellant's first two points of error, making consideration of points 3 through 6 unnecessary. Since the statute authorizing the taxpayer suit (Tex.Tax Code Ann. § 42.25 (Vernon 1982)) does not expressly provide for the award of attorney's fees to the prevailing taxpayer, we overrule appellant's seventh point of error.[1] *Knebel v. Capital Nat'l Bank in Austin*, 518 S.W.2d 795 (Tex.1975).

The judgment of the trial court is reversed. We here render judgment that the two pipelines owned by Coastal States that are not engaged in the transportation of oil are not subject to appraisal and taxation under Chapter 24 of the Tax Code.

1. The statute does permit award of reasonable attorney's fees to a taxpayer who successfully claims that the appraisal value the Board assigned to his property was excessive. But here, the parties stipulated that those assigned values were accurate; this lawsuit dealt with the question of *whether* the property should be appraised and taxed at all, not the *value* of the appraisal.